Cynthia Lee DAWSON–
AUSTIN, Appellant

v.

William Franklin AUSTIN, Appellee.

No. 05–94–00056–CV.

Court of Appeals of Texas,
Dallas.

Feb. 29, 1996.

Jeffrey H. Kobs, Thomas M. Michel, and David L. Evans, Hooper Evans & Kobs, L.L.P., Fort Worth, for appellant.

M.J. (Ike) Vanden Eykel, Koons Fuller & Vanden Eykel, Dallas, Harry L. Tindall, Tindall & Foster, Houston, Ann Crawford McClure, McClure & McClure, El Paso, and Richard R. Orsinger, San Antonio, for appellee.

Before LAGARDE, OVARD, and CHAPMAN, JJ.

## OPINION ON REHEARING

LAGARDE, Justice.

This Court's opinion of January 3, 1995 is vacated. The following is now the opinion of this Court.

Cynthia Lee Dawson–Austin (Wife) appeals from the decree of divorce entered by the trial court dissolving her marriage to William Franklin Austin (Husband). She brings twenty-one points of error contending that the trial court lacked jurisdiction over the case, mischaracterized certain stock as Husband's separate property, failed to apply the correct law, erred in proceeding to judgment in the case, and failed to fairly and justly divide the community property. We overrule the points of error and affirm the trial court's judgment.

## FACTUAL BACKGROUND

The parties were married in 1980 in China while domiciled in Minnesota. Before they were married, Husband acquired stock in the Starkey Corporation. In February 1992, the couple separated. Husband moved to Texas. Wife filed for divorce in California, but she did not obtain service of process for more than six months. When Husband had resided in Texas six months, he filed for divorce. Husband obtained service of process on Wife in this action before she served him in the California case.

The trial court determined that it had jurisdiction over the parties and the property in the case. It found that the Starkey stock was Husband's separate property and that no part of it constituted community property. The court distributed approximately fifty-five percent of the community estate to Wife and approximately forty-five percent to Husband.

## ESTOPPEL

■ Husband contends in his first reply point that Wife is estopped from appealing the trial court's judgment because she has accepted the benefits of the judgment. Specifically, Husband asserts that Wife's acceptance of temporary support, interim attorney's fees, expenses of transporting witnesses to trial in Dallas, and attorney's fees included in the divorce decree constituted acceptance of the benefits of the judgment.

■ A litigant cannot treat a judgment as both right and wrong by voluntarily accepting the benefits of a judgment while prosecuting an appeal from it. *Carle v. Carle*, 149 Tex. 469, 474, 234 S.W.2d 1002, 1004 (1950); *Demler v. Demler*, 836 S.W.2d 696, 697 (Tex.App.—Dallas 1992, no writ). This rule, however, is inapplicable where a reversal of the judgment on the grounds asserted by the appellant could not possibly affect those benefits received. *Carle*, 234 S.W.2d at 1004; *Demler*, 836 S.W.2d at 697. Acceptance of cash benefits has been held to be an exception to the general rule announced in *Carle*. *Demler*, 836 S.W.2d at 698; *Haggard v. Haggard*, 550 S.W.2d 374, 377 (Tex.Civ.App.—Dallas 1977, no writ).

Acceptance of cash benefits under a judgment does not necessarily prejudice the rights of the other spouse. Upon redivision of the property, if necessary, the trial court can take into consideration the money awarded. If there is an insufficient cash award to repay the money accepted, assets can be ordered sold to meet the debt. *Demler*, 836 S.W.2d at 698.

The interim attorney's fees, witness-transportation expenses,[1] and temporary spousal support were not part of the final divorce decree, so Wife's acceptance of these benefits does not prejudice her ability to appeal the divorce decree. Wife's acceptance of attorney's fees included in the divorce decree was acceptance of a cash benefit. *See Demler*, 836 S.W.2d at 698. The divorce decree shows that Wife will have sufficient assets to cover a possible reimbursement of the attorney's fees, if necessary. The record does not show any possibility that reversal of the judgment in this case would prejudice Husband's rights to the benefits secured under the judgment. *Demler*, 836 S.W.2d at 698; *Haggard*, 550 S.W.2d at 377. We hold that Wife is not estopped from prosecuting her appeal. We overrule Husband's first reply point.

## SPECIAL APPEARANCE

After being served in this case, Wife filed on October 30, 1992, in one instrument, a special appearance, a motion to quash service of citation, a plea to the jurisdiction of the court, a plea in abatement, and subject to these, a general denial. On November 10, 1992, the day of the hearing, Wife's attorney filed a motion for continuance. The trial court denied the continuance. The court then denied the facially defective special appearance and proceeded to consider and deny the motion to quash service of citation. The court did not rule on the plea to the jurisdiction or the plea in abatement. On November 11, 1992, Wife filed an amended special appearance and a motion for reconsideration of the special appearance, motion to quash service of citation, plea to the jurisdiction, and plea in abatement. After an evidentiary

---

1. The record shows that Wife did not take advantage of this benefit.

hearing on November 16, 1992, the trial court denied the motion to reconsider.

## Continuance

■ In her first point of error, Wife contends that the trial court erred in denying her motion for continuance. The only mention of the motion for continuance in Wife's brief is the factual statement that Wife filed the motion and the trial court denied it and the legal conclusion that the trial court abused its discretion in refusing to continue the hearing. The brief contains no argument or authorities on this point of error. Rule 74(f) of the Texas Rules of Appellate Procedure requires that an appellant's brief include "such discussion of the facts and authorities relied upon as may be requisite to maintain the point at issue." Tex.R.App.P. 74(f). Points of error asserted on appeal but not briefed are waived. *See Texaco, Inc. v. Pennzoil, Co.,* 729 S.W.2d 768, 810 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988); *Charter Builders v. Durham,* 683 S.W.2d 487, 489 (Tex. App.—Dallas 1984, writ ref'd n.r.e.). By not making any argument or citing any authorities in support of this point of error, Wife has waived it. We overrule Wife's first point of error.

## Defective Special Appearance

■ In her second point of error, Wife contends that the trial court erred in overruling her special appearance on November 10, 1992.[2] The special appearance was included in an instrument also containing a motion to quash service of citation, a plea to the jurisdiction of the court, a plea in abatement, and

2. There is a conflict in the record as to whether the hearing on the original special appearance was held on November 10 or 11. The statement of facts from the hearing states it occurred on November 11. The docket sheet states it occurred on November 10. After the hearing, the trial court signed an order denying the special appearance and motion to quash service of citation. That order is dated November 10.

3. The verification states:
The undersigned states under oath: "I am the Respondent in the foregoing SPECIAL APPEARANCE, MOTION TO QUASH SERVICE OF CITATION, PLEA TO THE JURISDICTION

Wife's original answer. Wife's verification attached to the instrument, however, failed to swear to her personal knowledge and to the truth of the special appearance.[3] Thus, the special appearance was unverified.

■ Rule 120a of the Texas Rules of Civil Procedure governs special appearances. *See* Tex.R.Civ.P. 120a. That rule provides, "Such special appearance shall be made by *sworn* motion...." Tex.R.Civ.P. 120a(1) (emphasis added). The trial court does not err in denying an unsworn special appearance. *See Villalpando v. De La Garza,* 793 S.W.2d 274, 276 (Tex.App.—Corpus Christi 1990, no writ). The special appearance before the trial court on November 10, 1992 was unsworn and, therefore, defective. Accordingly, the trial court did not err in denying the special appearance on November 10, 1992. We overrule Wife's second point of error.

## Amended Special Appearance

■ In her third point of error, Wife contends that on November 16, 1992, the trial court erred in denying her motion to reconsider the denial of her special appearance. After the trial court denied her first special appearance, Wife filed an amended special appearance, motion to quash service of citation, plea to the jurisdiction, plea in abatement, and, subject to all these, a general denial. This document is nearly identical to the original instrument, and "special appearance" is added to the list of items in the verification.

A defective special appearance may be amended to cure the defects. Tex.R.Civ.P. 120a(1); *see Stegall & Stegall v. Cohn,* 592

OF THE COURT, PLEA IN ABATEMENT, AND SUBJECT TO ALL OF THE ABOVE, RESPONDENT'S ORIGINAL ANSWER. I have personal knowledge of the facts and allegations stated in the foregoing MOTION TO QUASH SERVICE OF CITATION, PLEA TO THE JURISDICTION OF THE COURT, PLEA IN ABATEMENT, AND SUBJECT TO ALL OF THE ABOVE, RESPONDENT'S ORIGINAL ANSWER, and they are true and correct."
Wife characterizes the omission of the words "special appearance" as a clerical or typographical error. However, clerical error or not, the omission left the special appearance unverified.

S.W.2d 427, 428 (Tex.Civ.App.—Fort Worth 1979, no writ). However, the special appearance must be heard and determined before any other plea or motion may be heard. TEX.R.CIV.P. 120a(2). Any appearance not in compliance with rule 120a constitutes a general appearance. TEX.R.CIV.P. 120a(1).

At the hearing on November 10, 1992, after the trial court denied the special appearance, the court proceeded to consider the motion to quash service of citation. Wife made no objection to the trial court's consideration of this motion on November 10. Her attorney argued the motion to the trial court. The trial court signed an order that day stating that Wife appeared through her attorney, that the court considered the special appearance and the motion to quash service of citation, and that it denied them.

Husband argues that Wife's failure to amend the special appearance before the trial court heard and ruled on other motions resulted in Wife making a general appearance. Wife argues that the amendment of the special appearance after the trial court had heard and ruled on the motion to quash service of citation did not affect the validity of the special appearance because the rules provide for amendment of special appearances and because Husband set the motion to quash service of citation for a hearing at the same time as the special appearance.

Wife cites cases holding that a special appearance can be amended after the hearing on the special appearance and even after the judgment. See Koch Graphics, Inc. v. Avantech, Inc., 803 S.W.2d 432, 433 (Tex.App.—Dallas 1991, no writ); Stegall & Stegall, 592 S.W.2d at 429; Dennett v. First Continental Inv. Corp., 559 S.W.2d 384, 385–86 (Tex.Civ.App.—Dallas 1977, no writ). However, in none of these cases did the party specially appearing seek any other relief between the initial denial of its special appearance and the hearing on the amended special appearance. Wife, by arguing the motion to quash service of citation at the November 10 hearing, violated the rule that the trial court not rule on any other plea or pleading before the special

appearance. Thus, Wife forfeited her right to a "second bite at the apple" on the special appearance.

Wife's argument that Husband set the motion to quash service of citation for hearing at the same time as the special appearance is without merit. Wife did not object when the trial court began considering the motion. Wife argued the motion. She never suggested to the trial court that she wanted to amend her special appearance before the trial court considered any other issues.[4] Wife generally appeared by arguing the motion to quash service of citation.

We hold that the trial court did not err on November 16, 1992 in denying Wife's motion to reconsider. We overrule her third point of error.

### Due Process Guarantees

In her fourth point of error, Wife contends that the trial court's exercise of jurisdiction over her violated her constitutional due process rights. When a party generally appears in a case before obtaining a favorable ruling on a special appearance, the trial court can exercise jurisdiction over the party without violating the party's due process rights. In this case, Wife generally appeared before presenting her amended special appearance. Accordingly, the trial court did not violate her due process rights. See Temperature Sys., Inc. v. Bill Pepper, Inc., 854 S.W.2d 669, 677 (Tex.App.—Dallas 1993, writ dism'd by agr.); see also Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex.1985). We overrule Wife's fourth point of error.

### Jurisdiction over Marital Property

In her fifth and sixth points of error, Wife contends that the trial court erred in finding that it had jurisdiction to divide the couple's marital property located inside or outside Texas. Wife's argument on these points is dependent on our holding that the trial court lacked personal jurisdiction over Wife. Because we have ruled that the trial court did

---

4. Because the trial court was not presented with such a request, we need not rule on whether the denial of such a request would affect the special-

ly appearing party's ability to amend the special appearance. That issue is not before us, and we make no ruling on the issue.

not err in asserting personal jurisdiction over Wife, these points lack merit. We overrule Wife's fifth and sixth points of error.

In her seventh point of error, Wife contends that the trial court erred in finding that it was not required to have *in personam* jurisdiction over Wife in order to divide the marital property. The trial court made no such finding.[5] In its Finding of Fact 3(b), the trial court found "that the Court has jurisdiction of all the parties and subject matter of the cause." We overrule Wife's seventh point of error.

## MOTION TO QUASH SERVICE OF CITATION

■ In her eighth point of error, Wife contends that the trial court erred in overruling her motion to quash service of citation. The statements of facts from the November 10 and 16, 1992 hearings show that the trial court overruled the motion to quash on the ground that it was moot because Wife had filed an answer in the case. Wife argues that the motion to quash was not moot because her answer was filed "subject to" the motion to quash.

Rule 122 governs "constructive appearances" for the purpose of challenging defects in service of citation. That rule provides,

> If the citation or service thereof is quashed on motion of the defendant, such defendant shall be deemed to have entered his appearance at ten o'clock a.m. on the Monday next after the expiration of twenty (20) days after the day on which the citation or service is quashed, and such defendant shall be deemed to have been duly served so as to require him to appear and answer at that time, and if he fails to do so, judgment by default may be rendered against him.

TEX.R.CIV.P. 122. The effect of this rule is that the defendant is deemed served when the trial court quashes the service or citation. The defendant obtains no benefit other than additional time to file an answer.

Wife argues that her answer's stating that it was filed "subject to" the motion to quash citation prevented the motion to quash the service of citation from being moot. She relies on two cases. In *London Assurance Corp. v. Lee*, 66 Tex. 247, 18 S.W. 508 (1886), and *Allright, Inc. v. Roper*, 478 S.W.2d 245 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ dism'd w.o.j.), the defendants filed motions to quash service of citation. They also filed conditional answers stating that they were to be considered only if the motions to quash were denied. *London Assurance Corp.*, 66 Tex. at 248, 18 S.W. at 509; *Allright, Inc.*, 478 S.W.2d at 247. In both cases, the trial courts sustained the motions. In effect, the defendants never filed answers. The reviewing courts ruled that, because of the expressly conditional language of the answers that they were not to be relied on unless the motions were overruled and because the motions were sustained, the conditional answers did not serve as answers under those facts. *London Assurance Corp.*, 66 Tex. at 248, 18 S.W. at 509; *Allright, Inc.*, 478 S.W.2d at 247.

■ Wife's answer, however, does not state that it is to be considered only in the event that the motion to quash is overruled. It states only that it is "subject to hearings and determination of the three previous motions," *i.e.*, the plea in abatement, the plea to the jurisdiction of the court, and the motion to quash service of citation. Where defendants have stated only that the answer is "subject to" the motion to quash service of citation, the courts have held that the answer constitutes a general answer waiving the necessity for service as well as waiving any defects in the citation. *Parr v. First State Bank*, 507 S.W.2d 579, 581 (Tex.Civ.App.—San Antonio 1974, no writ); *Hickey v. Sibley*, 304 S.W.2d 165, 166 (Tex.Civ.App.—Waco 1957, no writ); *see also Bowen v. State*, 413 S.W.2d 915, 916 (Tex.Crim.App.1967) (bond forfeiture case holding answer filed "subject to" motion to quash service of citation constituted general answer). These cases show that for an answer to be conditional, the

---

5. Wife makes no citation to the record to support her assertion that the trial court made such a finding. *See* TEX.R.APP.P. 74(d), (f). We have reviewed the record, and we have not discovered any such finding.

answer must expressly state the conditions under which it can be considered. Stating that an answer is "subject to" another pleading does not expressly state the conditions under which it can be considered. With the exception of a special appearance, such an answer may be considered for all purposes. Because Wife's answer was only "subject to" the motion to quash and was not expressly conditional on the overruling of the motion to quash, her answer was not conditional.

Wife also argues that the provision of rule 120a that permits pleas and motions to be filed in the same instrument as the special appearance or filed after the special appearance without waiving it should apply to motions to quash service of citation under rule 122. *See* Tex.R.Civ.P. 120a(1). Wife cites no authority for this proposition. Nothing in rule 120a or rule 122 suggests that the procedure in rule 120a applies to rule 122. The language of rule 120a is specific in its application to special appearances. *See* Tex. R.Civ.P. 120a. Wife's argument lacks merit.

Because Wife filed an unconditional answer, she waived service of process and any defects in the service. We hold that the trial court did not err in overruling her motion to quash service of citation. We overrule Wife's eighth point of error.

## PLEA IN ABATEMENT

In her ninth point of error, Wife contends that the trial court abused its discretion in failing to stay or abate the Texas divorce proceeding. Wife filed her divorce petition in California on April 10, 1992. On September 10, 1992, Husband filed for divorce in Texas and had Wife served with service of citation on September 14, 1992. Wife had husband served in the California case on October 16, 1992. Wife argues that because suit was first filed in California, the Texas court should have abated the suit until the California case was concluded.

A motion to stay is directed to the discretion of the court, and the granting or denying of the motion will only be reviewed for abuse of discretion. *Space Master Int'l, Inc. v. Porta–Kamp Mfg. Co.*, 794 S.W.2d 944, 946 (Tex.App.—Houston [1st Dist.] 1990,

no writ); *Nowell v. Nowell*, 408 S.W.2d 550, 553 (Tex.Civ.App.—Dallas 1966, writ dism'd), *cert. denied*, 389 U.S. 847, 88 S.Ct. 53, 19 L.Ed.2d 116 (1967).

The mere pendency of an action in one state will not be grounds for abating a suit in another state between the same parties and involving the same subject matter. As a matter of comity, however, it is customary for the court in which the later action is instituted to stay proceedings until the prior action is determined. The custom has practically grown into a general rule that strongly urges the court in which the subsequent action is instituted to stay or abate its proceedings. *Space Master*, 794 S.W.2d at 946.

The Texas Supreme Court has carved out an exception to this general rule. When the plaintiff unreasonably delays in serving process on the defendant, the trial court does not necessarily abuse its discretion in refusing to stay the later filed case. *See Reed v. Reed*, 158 Tex. 298, 311 S.W.2d 628, 631 (Tex.1958). In *Reed*, the husband filed for divorce in El Paso County. He waited more than fifteen months to have the wife served with process. In the meantime, the wife filed for divorce in Bexar County and had the husband served before she was served in the El Paso action. *Id.* at 629. The supreme court held that the Bexar County trial court did not abuse its discretion in overruling the husband's motion to stay the proceedings because the husband showed lack of diligence by unreasonably delaying having the wife served until after he was served in her divorce action. *Id.* at 630–31. In *Curtis v. Gibbs*, 511 S.W.2d 263 (Tex.1974) (orig. proceeding), the supreme court held as a matter of law that no unreasonable diligence occurred when the petitioner in the first suit did not have the respondent served until twenty-six days after filing suit. *Id.* at 268. The court found significant the fact that the respondent in the first suit did not file suit during the delay. *Id.*

In this case, Wife delayed six months before having Husband served. During the delay, Husband filed suit against Wife and had her served. Even after she was served in the Texas case, Wife waited more than a

month to have Husband served in the California action. The trial court found that Wife "exercised no diligence in securing service of process upon [Husband] and did not attempt to effectively prosecute her case until after she was served with process in this action."

Wife argues, however, that Husband cannot assert her delay in serving him because of *Beckman v. Beckman,* 716 S.W.2d 83 (Tex. App.—Dallas 1986, writ dism'd). Wife then quotes from *Beckman:* "This court held that 'because [the wife's] reliance on [the husband's] representations that the Dallas County suit would be dismissed, a question of estoppel against [the husband] exists with respect to whether [the wife's] plea in abatement was seasonably raised.'" *Id.* at 86 (Wife's brackets). *Beckman* is not applicable. Nothing in the record shows that Husband told Wife he would dismiss the suit. Wife's only testimony concerning this issue was that he told her, before he was served with citation and before he had filed his divorce action, that he did not think they should get divorced. This statement does not constitute the sort of representation that could have excused Wife from serving Husband with process.

Wife also argues that she acted with diligence in having Husband served. She lists the following activities as diligence in serving Husband with process: "She hired a lawyer and paid a lawyer; instituted suit and had papers served, at least she thought, on [Husband] in Minnesota; was harassed by [Husband]; and interviewed anywhere from 15 to 16 attorneys once her lawyer withdrew. However, after the lawsuit was filed, [Wife] waas [sic] forced to move into a shelter and lacked sufficient funds to more vigorously prosecute the lawsuit." With the exception of trying to serve Husband in Minnesota, none of these reasons constitute "diligence" in obtaining service of process. At best, they only constitute attempts at explanations for her lack of diligence. As for Wife's statement that she thought Husband had been served in Minnesota, she does not explain why she believed he had been served. Nor do the records from the California action

show any attempt at service on Husband prior to October 1992.

Wife also argues for the first time on appeal that the trial court should have stayed the Dallas action because Husband had not been a resident of Texas for six months when he filed suit. Husband stated that he moved from Minnesota to Texas on March 10, 1992. Wife points to evidence showing that Husband was in Minnesota on March 10. The fact that Husband was in Minnesota on March 10 is not inconsistent with his testimony that he moved from Minnesota to Texas that day.

Wife has not shown that the trial court abused its discretion in overruling her motion to stay or abate the Dallas County action. We overrule Wife's ninth point of error.

## CALIFORNIA DIVORCE

In her sixteenth through twentieth points of error, Wife contends that the trial court erred in failing to give full faith and credit to the California divorce decree, finding that the California divorce decree was not final, failing to apply California law to determine the finality of the divorce decree, granting the divorce and attempting to divide the property because the parties had been divorced in California, and refusing to apply California law in dividing the property of the parties as required by section 3.91(b) of the Texas Family Code. On August 6, 1993, during the trial of this case in Dallas, the California court signed a judgment purporting to dissolve the marriage. A properly certified copy of the California divorce decree was presented to the trial court in this case on August 25, 1993. The trial court granted Wife's motion requesting the trial court to take judicial notice of California law.

A court upon its own motion may, or upon the motion of a party shall, take judicial notice of the statutes, rules, and court decisions of other states. TEX.R.CIV.EVID. 202. The court's determination shall be subject to review as a ruling on a question of law. *Id.* In the absence of pleading and proof of the law of a sister state, it is presumed that the law of the state where the judgment was rendered is identical to the law of Texas.

See *Gevinson v. Manhattan Constr. Co.*, 449 S.W.2d 458, 465 n. 2 (Tex.1969); *Stine v. Koga*, 790 S.W.2d 412, 414 (Tex.App.—Beaumont 1990, writ dism'd by agr.).

This case requires a determination of the applicability of Texas and California statutes. Section 3.91(b) of the Texas Family Code provides, "if a final decree of divorce or annulment rendered by a court in another state failed to dispose of property subject to division under the law of that state *even though the court had jurisdiction to do so,* the court of this state shall apply the law of the other state. . . ." TEX.FAM.CODE ANN. § 3.91(b) (Vernon 1993) (emphasis added). Section 4514 of the California Civil Code provides that a decree of marital dissolution is final notwithstanding the pendency of a motion for new trial or an appeal unless the movant or appellant objected to the dissolution at trial. *See* CAL.CIV.CODE § 4514 (repealed, now codified at CAL.FAM.CODE § 2341 (Deering 1994)). Wife argues that section 4514 of the California Civil Code means that the California court's divorce decree was a "final decree of divorce . . . rendered by a court in another state." *See* TEX.FAM.CODE ANN. § 3.91(b) (Vernon 1993). She asserts that section 3.91(b) in this situation required the Texas court to apply California law to the distribution of the property. For purposes of this opinion, we will assume, without deciding, that the California divorce decree was a "final judgment" under California law of the marital dissolution of the parties. The finality of the decree alone is not sufficient to make section 3.91(b) applicable to this case. Section 3.91(b), by its terms, applies only when the foreign court failed to divide property even though it had jurisdiction to do so. When the foreign court lacked jurisdiction to divide the property, section 3.92(b) provides that "a court of this state may . . . divide the property in a manner that the court deems just and right. . . ." TEX.FAM.CODE ANN. § 3.92(b) (Vernon 1993).

In this case, Wife filed for bankruptcy protection before the California court entered its divorce decree.[6] The trial court in this case entered a finding that the California court did not divide the property, that the California court lacked jurisdiction to divide the property, and that the California court expressly reserved jurisdiction to divide the property. When Wife filed for bankruptcy protection, she deprived the California court of jurisdiction to divide any property in which she had an interest. *See Robbins v. Robbins,* 964 F.2d 342, 345 (4th Cir.1992); *In re Becker,* 136 B.R. 113, 115 (Bankr.D.N.J. 1992). Because the California court did not have jurisdiction to divide the property, section 3.91(b) of the Texas Family Code was inapplicable. Under the facts of this case, neither section 3.91(b) nor section 3.92(b) required the Texas trial court to apply California law. We overrule Wife's sixteenth, seventeenth, eighteenth, and twentieth points of error.

In her nineteenth point of error, Wife contends that the trial court erred in granting the divorce and in attempting to divide property because the parties had previously been divorced in California. We have already held that the California divorce decree did not deprive the Texas court of jurisdiction to divide the parties' property. We must now determine whether the trial court erred in entering a decree purporting to divorce the parties. Wife's argument is that the California divorce decree was res judicata of the parties' marital status. Wife, however, never affirmatively pleaded res judicata. The failure to plead res judicata results in the waiver of its effect. *See Green v. Doakes,* 593 S.W.2d 762, 764 (Tex.Civ.App.— Houston [1st Dist.] 1979, no writ). Because Wife did not affirmatively plead that the California divorce decree was res judicata of the parties' marital status, the trial court did not err in entering a divorce decree. We overrule Wife's nineteenth point of error.

## CHARACTERIZATION OF THE STARKEY STOCK

In her tenth through thirteenth points of error, Wife contends that the trial court erred in applying Texas law, instead of Minnesota law, to determine the characterization of the Starkey stock. Husband

---

6. The Texas trial court stayed proceedings in this case after the bankruptcy filing. After the auto-matic stay was lifted, the Texas trial court resumed the proceedings in this case.

owned the stock before he was married. During the marriage, the stock increased greatly in value. Husband filed a partial motion for summary judgment asserting that the entire value of the corporation was his separate property as a matter of law because the shares were issued before marriage and he never divested himself of any of the shares or acquired additional shares during the marriage. The trial court granted the partial motion for summary judgment.

## Standard of Review

The function of a summary judgment is not to deprive a litigant of its right to a full hearing on the merits of any real issue of fact but is to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). The standards for reviewing a motion for summary judgment are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.
3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex. 1984); *Wilcox v. St. Mary's Univ.*, 531 S.W.2d 589, 592–93 (Tex.1975). The purpose of the summary judgment rule is not to provide either a trial by deposition or a trial by affidavit but to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that no genuine issue of material fact remains. *Gaines v. Hamman*, 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962).

## Choice of Law

The dispute on this issue is which state's laws apply to determine the characterization of the stock. Under the Texas Constitution and Minnesota statutes, the shares, to the extent of their value at the time of marriage, are Husband's separate property. *See* MINN. STAT.ANN. § 518.54(5)(b) (West Supp.1996) (" 'Nonmarital property' means property real or personal, acquired by either spouse before, during, or after the existence of their marriage, which ... (b) is acquired before the marriage...."); TEX. CONST. art. 16, § 15 ("All property, both real and personal, of a spouse owned or claimed before marriage ... shall be the separate property of that spouse...."). The parties disagree about the characterization of the appreciation in value of the stock during the marriage.

In Texas, separate property is considered in terms of the item itself, not in terms of its value. If separate property produces income, that income is community property. *See Bakken v. Bakken*, 503 S.W.2d 315, 317–18 (Tex.Civ.App.—Dallas 1973, no writ) (cash dividends from separate-property mutual fund are community property; capital gains distribution from separate-property mutual fund is separate property). However, an increase or decrease in the value of the item of separate property is an inherent part of the item and cannot be separated from it. *See Jensen v. Jensen*, 665 S.W.2d 107, 109 (Tex.1984); *Bakken*, 503 S.W.2d at 317–18. The community estate is entitled to reimbursement from the separate estate for improvements to the separate estate paid for by the community estate. If a spouse's separate estate is improved by the time, toil, and effort of one or both spouses, the community has an equitable claim for reimbursement for the reasonable value of the time, toil, and effort spent increasing the value of the spouse's separate estate. *Jensen*, 665 S.W.2d at 109; *Vallone v. Vallone*, 644 S.W.2d 455, 458–59 (Tex.1982). The community is not entitled to reimbursement for increases in the value of separate property caused by market forces.

In Minnesota, increases in the value of "nonmarital" property not attributable to the time, toil, and effort of one of the spouses are also "nonmarital." However, the Minnesota marital property scheme differs from the Texas scheme with regard to increases in value attributable to the time, toil, and effort

of one of the spouses during the marriage. In Minnesota, any such increase is "marital" property and is subject to equitable division on divorce. *Nardini v. Nardini*, 414 N.W.2d 184, 192 (Minn.1987) ("[T]he increase in the value of nonmarital property attributable to the efforts of one or both spouses during their marriage . . . is marital property. Conversely, an increase in the value of nonmarital property attributable to inflation or to market forces or conditions, retains its nonmarital character."); *see also Berenberg v. Berenberg*, 474 N.W.2d 843, 846 (Minn.Ct. App.1991) (review denied) (quoting *Nardini*).

Under Texas law, then, the entirety of the stock would be Husband's separate property.[7] Under Minnesota law, only the value of the corporation at the time of marriage, plus any increase in value during the marriage not attributable to the efforts of one or both spouses, would be Husband's "nonmarital" property. Any increase in value attributable to the efforts of one or both spouses would be "marital" property subject to equitable division on divorce.

### Texas Family Code Section 3.63(b)

Prior to September 1, 1981, the characterization in Texas of personal property as either separate or community was determined by the characterization of the property in the state where the acquiring spouse resided at the time of acquisition. *See Ossorio v. Leon*, 705 S.W.2d 219, 222–23 (Tex.App.—San Antonio 1985, no writ). This rule resulted in some hardship to those whose spouses acquired property during the marriage in common-law states that classified such property as separate property. On moving to Texas

and later dissolving the marriage, the Texas court would characterize and set aside the property as separate property even though the property would have been subject to an equitable distribution in a divorce proceeding under the laws of the other state. *See Cameron v. Cameron*, 641 S.W.2d 210, 220–21 (Tex.1982). Two events eliminated this problem. The Texas Legislature passed section 3.63(b) of the Family Code. *See* TEX.FAM. CODE ANN. § 3.63(b) (Vernon 1993);[8] *see also Cameron*, 641 S.W.2d at 221–22. Under that provision, property that would be classified as community property if the spouses had resided in Texas at the time of its acquisition is classified as community property on divorce in Texas regardless of the characterization of the property in the state of its acquisition. *See* TEX.FAM.CODE ANN. § 3.63(b) (Vernon 1993). The Texas Supreme Court believed this approach to be so sensible that it adopted the rule for cases predating the statutory provision. *See Cameron*, 641 S.W.2d at 223. The second event occurred in 1984, when the Texas Supreme Court adopted section 6 of the Restatement (Second) of Conflict of Laws in all cases except contract cases containing a choice-of-law provision. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.1984); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971).

Husband asserts that section 3.63(b) operates as a comprehensive choice-of-law provision in property characterization issues. He argues that section 3.63(b)(1) should be read as providing that the characterization of property is dependent solely on Texas law. Under Husband's interpretation of section

---

7. The community has no claim for equitable reimbursement in this case because the trial court found both spouses to have been adequately compensated for their time, toil, effort, and talent devoted to the operation of Starkey and to preserving and maintaining Husband's separate estate. *See Jensen*, 665 S.W.2d at 109–10. These findings are not challenged on appeal.

8. Section 3.63(b) provides:

In a decree of divorce or annulment the court shall order a division of the following real and personal property wherever situated, in a manner that the court deems just and

right, having due regard for the rights of each party and any children of the marriage:

(1) property that was acquired by either spouse while domiciled elsewhere and that would have been community property if the spouse who acquired the property had been domiciled in this state at the time of the acquisition; or

(2) property that was acquired by either spouse in exchange for real or personal property, and that would have been community property if the spouse who acquired the property so exchanged had been domiciled in this state at the time of its acquisition.

TEX.FAM.CODE ANN. § 3.63(b) (Vernon 1993).

3.63(b), if property is characterized as community property in the residential state of the acquiring party but would have been separate property if the parties had resided in Texas, then in a divorce proceeding in a Texas court, the property will be classified as separate property.

We disagree with Husband's sweeping interpretation of section 3.63(b). The statute by its terms acts only *to expand, not restrict, the definition of community property.* Nothing in the legislative history of the statute or the development of the law in this area suggests that section 3.63(b) was intended to expand the definition of separate property and thus restrict the extent of community property. Even the popular name for the statute, the "quasi-community" statute, suggests that it is intended to expand the definition of community property. *See Cameron,* 641 S.W.2d at 223; *Ismail v. Ismail,* 702 S.W.2d 216, 219 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). If the legislature had intended for the statute to be a comprehensive choice-of-law provision, it would not have phrased the statute as an expanded definition of community property.

Following *Duncan,* choice-of-law issues are decided under section 6 of the Restatement (Second) of Conflict of Laws. *See Ossorio,* 705 S.W.2d at 223 (choice of law concerning property division after death of spouse); *see also Seth v. Seth,* 694 S.W.2d 459, 462 (Tex. App.—Fort Worth 1985, no writ) (choice of law concerning validity of prior divorce and remarriage). Section 6 of the Restatement provides:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of the interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971). Because we have held that section 3.63(b) of the family code is not a comprehensive choice-of-law provision, and because there is no other applicable choice-of-law provision, we apply section 6(2) of the Restatement.

■ The first factor, the needs of the interstate and international systems, is not affected in this case. The property at issue is a closely held corporation owned by a single stockholder who, through the trial, had not evinced any interest in selling the corporation.

The next two factors are the relevant policies of the forum state and other interested states. Minnesota's connection to the litigation is the fact that the parties were domiciled in Minnesota when they married and that Starkey is a Minnesota corporation. Neither party now lives in Minnesota. Texas's connection to the lawsuit is that Husband now lives in Texas and he filed for divorce in Texas. Texas also has a policy of constitutional dimensions of protecting both separate and community property under its characterization scheme. *See* TEX.FAM.CODE ANN. § 3.63(b) (Vernon 1993) (property characterized as community property regardless of characterization in other states); *Cameron,* 641 S.W.2d at 222 (judicially adopting section 3.63(b) as substantive law); *see also Cameron,* 641 S.W.2d at 219 (spouse cannot be divested of either personal or real separate property).

■ The factor of protection of justified expectations concerns whether the parties have molded their conduct to conform to the requirements of a particular state. If the parties act without thought of the legal consequences, they have no justified expectations to protect and the factor cannot play a part in the decision of the choice-of-law ques-

tion. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 cmt. a (1971). Wife does not appear to have taken any actions in reliance on the application of Minnesota law. Assuming that Husband did not move to Texas for the sole purpose of taking advantage of this state's broader definition of separate property, he does not appear to have acted in reliance on Texas law. Accordingly, this factor does not play a part in our analysis.

■ The basic policies underlying the particular field of law, division of spouses' property upon divorce, are similar. Both states try to divide property acquired during the marriage in a fair manner that compensates for any wrongs committed during the marriage. However, the states approach the problem of division of increase of value of separate or nonmarital property attributable to the spouses' time, toil, and effort from different perspectives. In Minnesota, they simply divide that value as marital property. In Texas, however, an increase in an asset's value, however caused, is not property; the item itself, with whatever value it has, is property. If the item is proved to be separate property, the Texas Constitution prohibits transformation of that item into community property. Texas requires the spouse whose separate estate has been improved by assets of the community estate, including both spouses' time, toil, and effort spent improving the separate estate, to reimburse the community estate for those assets and time, toil, and effort. Such reimbursement can take the form of salary to the spouses from a separate-property business or the community's receipt of other benefits from the separate estate. *See, e.g., Jensen*, 665 S.W.2d at 109–10.

The next factors are predictability and uniformity of result and ease in the determination and application of the law to be applied. These were two factors that led the Texas Legislature to pass section 3.63(b) and the supreme court to adopt it as the substantive

law. *See Cameron*, 641 S.W.2d at 222. Applying Texas characterization principles to increases in value of separate property greatly simplifies the division of the parties' assets. Using the rule of domicile would require the courts to determine how much of the increased value attributable to the spouses' time, toil, and effort accrued while domiciled in a particular state. If a spouse were to change states frequently, determination of the applicable law and the applicable accrued value under that state's law would be a tremendous burden for any court and could be subject to unpredictable results.

The final factor under section 6 is reciprocity. Texas does not have a policy of reciprocation in the area of marital property. *See, e.g.,* TEX.FAM.CODE ANN. § 3.63(b) (Vernon 1993) (property characterized as community property in Texas regardless of any other state's characterization). Thus, reciprocity is not a factor in this issue.

Weighing all these factors, we determine that Texas is the state with the most significant relationship to the action.[9] Accordingly, we apply Texas characterization principles and hold that the accrued value of the stock is not property apart from the stock itself.

Husband presented uncontroverted evidence that he owned the shares of Starkey before the marriage and that he owned them without interruption throughout the marriage. Accordingly, applying Texas characterization principles, the Starkey stock, with any value accrued during the marriage, is Husband's separate property. We hold that the trial court did not err in granting Husband's motion for summary judgment on this issue. We overrule Wife's tenth through thirteenth points of error.

## VERIFICATION OF SUPPLEMENTAL DISCOVERY RESPONSES

In her fourteenth point of error, Wife contends that the trial court erred in ruling that supplemental discovery responses designat-

9. Whether another State's law may have the most significant relationship under different facts *is not before us. Accordingly,* we make no holding that Texas is *always* the State with the most significant relationship in determining the characterization of accrued value of separate proper-

ty. We also do not consider whether the Texas Constitution would prohibit the application of another state's characterization principles to characterize as community property an asset that would be separate property under Texas characterization principles.

ing experts must be verified. Wife sought to present the testimony of Hanan to show the value of the Starkey corporation and the testimony of Dohmeyer to show the unreasonableness of Husband's and Wife's compensation from Starkey during the marriage. Wife attempted to designate in supplemental answers to interrogatories Hanan and Dohmeyer as experts on June 1, 1993 for a hearing held on July 1, 1993. Husband objected to the experts for four reasons: (1) the supplemental answer designating them as experts was not verified; (2) the responses failed to fully disclose the opinions and conclusions of the experts; (3) Wife did not file the supplemental responses prior to thirty days before trial; and (4) Wife did not file the supplemental responses as soon as practicable. The court sustained Husband's objection and stated on the record that it did so because the supplemental answers were not verified.[10]

Texas Rule of Civil Procedure 168(5) requires that answers to interrogatories be in writing under oath. A party must supplement discovery responses when they are or become incomplete or incorrect. Tex. R.Civ.P. 166b(6)(a). Any supplementation regarding an expert witness must be made "as soon as is practical, but in no event less than thirty (30) days prior to the beginning of trial except on leave of court." Tex. R.Civ.P. 166b(6)(b). The failure to supplement the discovery response concerning an expert witness results in the exclusion of that expert's testimony unless the party offering the testimony shows good cause, on the record, for the failure to supplement. Tex. R.Civ.P. 215(5).

Rule 168(5) expressly requires that answers to interrogatories be sworn. That rule, however, does not expressly mention the requirements for supplemental answers to interrogatories. Rule 166b(6)(a), which discusses supplemental discovery responses,

does not mention whether supplemental discovery responses must be sworn. See Tex. R.Civ.P. 166b(6)(a). Two lines of cases exist on the issue of verification of supplemental answers to interrogatories.

In one line of cases, started by *Jones v. Kinder*, 807 S.W.2d 868 (Tex.App.—Amarillo 1991, no writ), the courts have held that verification of supplemental answers is not necessary because it does not further the twin goals of the discovery rules: "(1) 'to encourage full discovery of the issues and facts prior to trial so that the parties could make realistic assessments of their respective positions,' and (2) 'prevent trial by ambush.'" *Jones*, 807 S.W.2d at 873 (quoting respectively *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989); *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex.1992)); *see Soefje v. Stewart*, 847 S.W.2d 311, 314 (Tex.App.—San Antonio 1992, writ denied); *Kramer v. Lewisville Memorial Hosp.*, 831 S.W.2d 46, 48 (Tex.App.—Fort Worth 1992), *aff'd*, 858 S.W.2d 397 (Tex. 1993); *Circle Y v. Blevins*, 826 S.W.2d 753, 756 (Tex.App.—Texarkana 1992, writ denied). The other line of cases, started by *Varner v. Howe*, 860 S.W.2d 458 (Tex.App.—El Paso 1993, no writ), holds that verification of supplemental answers is required if the original answers must be verified: "If the formalities of Rule 168 are mandatory . . . , then it logically follows that a supplementation to the answers previously given should observe the same formalities." *Varner*, 860 S.W.2d at 462; *see also Ramirez v. Ramirez*, 873 S.W.2d 735, 740 (Tex.App.—El Paso 1994, no writ).

■ We agree with the *Varner* line of cases instead of the *Jones* line. *Jones* and its progeny base their argument on the fact that rule 166b(6) regarding supplementation does not contain a verification requirement. Rule 166b(6) applies to supplementation of all forms of discovery. Although some forms of

---

10. The trial court's Finding of Fact 7(d) states: [Wife], although fully aware of the issues regarding adequacy of compensation in this case and the value of Starkey Laboratories, Inc. as it may have been enhanced during marriage, was not forthcoming in her responses to proper discovery request asking for the identification of her testifying expert witnesses and that

her answers in this case were not timely filed and that such answers were not verified or signed by [Wife] and that such answers identifying the experts were not made as soon as practical. The Court finds that such experts were hired in January 1993 and not disclosed until after May 31, 1993 . . . .

discovery require that the evidence be sworn, such as answers to interrogatories and answers to depositions, other forms of discovery responses, such as responses to requests for admission and responses to requests for production, do not have to be sworn. *See* Tex.R.Civ.P. 167(1), 168(5), 169(1), 204(2), 208(5). Because different forms of discovery have different verification requirements, including no verification requirement for some forms, it makes sense that the rule requiring supplementation of all forms of discovery would not dictate the form of supplemental responses. Thus, the fact that rule 166b(6) does not contain a verification requirement does *not* support the proposition espoused in *Jones* and its progeny that supplemental answers to interrogatories do not have to be verified. As the *Varner* court noted, the formalities necessary to respond originally to a request for discovery should apply to a supplemental response.

■ Rule 168(5) requires that answers to interrogatories be sworn; accordingly, supplemental answers to interrogatories must also be sworn. Because Wife's supplemental answers to interrogatories were not sworn, her supplementation was invalid. We overrule Wife's fourteenth point of error.

### GOOD CAUSE

■ In her fifteenth point of error, Wife contends that the trial court erred in concluding that Wife did not show good cause to permit her experts to testify. She asserts that her testimony shows sufficient good cause for her failure to verify the supplemental answers.

■ The determination of whether a party has shown good cause rests in the sound discretion of the trial court. *Alvarado*, 830 S.W.2d at 914. A reviewing court will not reverse a trial court on a matter in its discretion unless the record shows that the trial court acted without reference to any guiding rules or principles. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 298 (Tex.1986).

Wife testified that she was pursuing lawsuits in Texas and California and that she was overwhelmed by the paperwork that her lawyers submitted to her. In a previous

hearing, which the trial court considered at the good-cause hearing, Wife's attorney testified that he had filed the supplement without Wife's signature because he had been unable to secure her signature. He testified that she had stopped communicating with him. He had sent the documents to Wife and to Wife's attorney in California for Wife to sign, but he did not receive the documents from her. He thought that Wife would be in his Dallas office before the hearing to sign the documents, but she did not appear in his office or at the hearing. The trial court stated at this hearing,

> I think [Wife's attorney] made every reasonable effort to secure [Wife's] signature on these documents, and from what I hear, communicated them both to the California counsel and directly to [Wife]....
>
> \* \* \* \* \* \*
>
> I'm not foreclosing the continuation of the good cause hearing. When we find out what [Wife's] good cause was for not signing the interrogatories that [her attorney] timely forwarded to her for her execution—I think we all, as trial lawyers and former trial lawyers, can think of scenarios in which someone might be incapacitated and unable to sign those documents....
>
> So the objection to the experts right now is sustained, and the Court will just continue the good cause hearing until we can develop whatever [Wife's] problems were in her inability to execute these documents.

At the subsequent hearing, Wife did not explain the reasons for her failure to communicate with her Dallas attorney or her failure to appear in her Dallas attorney's office to sign the documents. She presented no evidence that the overwhelming paperwork left her incapacitated.

In *Alvarado v. Farah Manufacturing Co.*, the supreme court stated that the good-cause exception "permits a trial court to excuse a failure to comply with discovery in difficult or impossible circumstances." *Alvarado*, 830 S.W.2d at 914. The difficult circumstance preventing proper supplementation in this case was Wife's failure to sign the documents. This situation was not the result of

any incapacitation of Wife but was caused by her unexplained refusal to communicate with her attorney. Under these circumstances, we cannot conclude that the trial court abused its discretion in ruling that Wife did not show good cause.

 Wife next argues that we should apply the standards set out in *TransAmerican Natural Gas Corp. v. Powell* in this case. *See TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex.1991). The standards set out in *TransAmerican* concerned the review of death-penalty sanctions. *TransAmerican*, 811 S.W.2d at 916–19. Two intermediate appellate courts have extended the concept of death-penalty sanctions to the exclusion of expert witnesses for a party's failure to supplement discovery responses. *See Smart v. Winslow*, 868 S.W.2d 409, 415 (Tex.App.—Amarillo 1993, no writ); *Shell W.E & P, Inc. v. Partida*, 823 S.W.2d 400, 403–04 (Tex.App.—Corpus Christi 1992, orig. proceeding). We disagree with these cases. Rule 215(5) requires the trial court to exclude any evidence that a party failed to disclose in response to a proper discovery request. Tex.R.Civ.P. 215(5). This mandatory exclusion also applies to expert witnesses concerning whom a party fails to supplement a discovery response. Tex.R.Civ.P. 215(5). The sanction of exclusion is mandatory. *Alvarado*, 830 S.W.2d at 915. Application of the *TransAmerican* factors would be contrary to the clear language of rule 215(5). *TransAmerican* is not applicable to this case.

We hold that the trial court did not err in concluding that Wife failed to show good cause for her failure to supplement the discovery responses. We overrule Wife's fifteenth point of error.

## JUST AND RIGHT DIVISION

 In her twenty-first point of error, Wife contends that the trial court erred in its division of the community property because the division does not constitute a fair and just division but is manifestly unjust. She also contends that the trial court's finding of fact that the division was just and right is

against the great weight and preponderance of the evidence.

 Section 3.63 of the Texas Family Code requires the trial court to order a division in a manner that it deems just and right, having due regard for the rights of each party. Tex.Fam.Code Ann. § 3.63(a) (Vernon 1993). A trial court has wide latitude and discretion in dividing the community estate of the parties upon dissolution of the marriage, and on appeal, this Court presumes that the trial court exercised its discretion properly. *Vallone*, 644 S.W.2d at 460. The trial court's exercise of discretion in dividing the marital estate will be disturbed on appeal only where, after reviewing the entire record, it appears that the division was so unfair and unjust as to constitute an abuse of discretion. *Vallone*, 644 S.W.2d at 460; *Belz v. Belz*, 667 S.W.2d 240, 245 (Tex. App.—Dallas 1984, writ ref'd n.r.e.). In making a just and right division of the community estate, the trial court must view the case in its entirety. *Smallwood v. Smallwood*, 548 S.W.2d 796, 797 (Tex.Civ.App.— Waco 1977, no writ). A trial court may be guided by factors such as the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estates, and the nature of the property. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex.1981). The trial court's ultimate division need not be equal as long as it is equitable and the circumstances justify a disproportionate division. *Thomas v. Thomas*, 525 S.W.2d 200, 202 (Tex.Civ. App.—Houston [1st Dist.] 1975, no writ). Each case must be examined on its own merits to determine whether an unequal distribution was justified. *Oliver v. Oliver*, 741 S.W.2d 225, 229 (Tex.App.—Fort Worth 1987, no writ).

The trial court awarded 55.59% of the community property to Wife and 44.40% of the community property to Husband.[11] The

---

11. These percentages were those stated in the court's "Rendition" of October 17, 1993. The divorce decree and findings of fact and conclu-

sions of law list the property awarded but do not contain percentages. The record does not clarify what happened to the remaining .01%.

community estate was valued at $3,750,000. The trial court stated in its conclusions of law that the division of property was "based on the nature of the property, health of the parties, [and] future support needs...." The trial court found that both parties were in good health and capable of continuing employment. The court also found that Wife was skilled in the hearing health care industry and earned more than $70,000 per year during the marriage in a number of management and executive positions. The trial court made the unequal division of property in Wife's favor "to provide her with a higher standard of living than she would have if the Court were to divide the property equally." The court intended the unequal division to help Wife meet her needs for future support.

Wife argues that "[t]he trial court's division and award in the decree of divorce, when taken with the trial court's findings and the evidence adduced at trial that [Husband] has a higher earning capacity than [Wife] and has tremendously more separate property than [Wife], renders the court's conclusions and judgment against the great weight and preponderance of the evidence and makes the judgment manifestly unjust." We have examined the record, and we conclude that the evidence supports the trial court's finding that its division was just and right. The division was not manifestly unjust.

Wife's remaining arguments depend on our sustaining her points contending that California or Minnesota law is controlling. Because we overruled these points, Wife's arguments lack merit. We overrule Wife's twenty-first point of error.

We affirm the trial court's judgment.

CHAPMAN, J., dissenting without opinion.