**James LUCAS and Marilyn Lucas, Appellants,**

v.

**TITUS COUNTY HOSPITAL DISTRICT/TITUS COUNTY MEMORIAL HOSPITAL, Appellees.**

No. 06–96–00069–CV.

Court of Appeals of Texas, Texarkana.

Jan. 21, 1998.

Opinion Overruling Rehearing March 13, 1998.

148

James and Marilyn Lucas, Mount Pleasant, pro se.

Charles W. Blount, III, Dowd & Blount, Dallas, for Appellants.

Michael Ace, Nancy M. Fuller, Brown McCarroll & Oaks Hartline, Longview, for Appellees.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

James Lucas and his wife, Marilyn, appeal a take-nothing jury verdict in favor of Titus County Hospital District/Titus County Memorial Hospital. The Lucases sued the Hospital for negligence because it failed to properly maintain a waiting room reclining chair, which caused it to turn over when James attempted to sit in it, thereby causing him to suffer neck and back injuries.

In twenty points of error, the Lucases assert that (1) the trial court erred in refusing their motion to strike and in overruling their motion for mistrial, thereby allowing the testimony of Roy Mac Rosewell, William Carlisle, and Francis Stanbridge over objections that the Hospital had failed to supplement discovery with the witnesses' new area of knowledge, (2) there was a factual insufficiency to support the jury's finding that the Hospital was not negligent and that finding was against the overwhelming weight of the evidence, (3) there was a factual insufficiency to support the jury's finding that both James Lucas and Marilyn Lucas suffered no damage, and that finding was against the overwhelming weight of the evidence, (4) the amount of damages found by the jury to have been sustained by James and Marilyn was inadequate, (5) the court erred in refusing the Lucases' requested special issue, and instead submitted a question to the jury that required a finding of premises liability, (6) the court erred in submitting a question to the jury that was misleading, (7) the court erred in refusing the Lucases' requested special charge to the jury, and (8) the court erred in refusing to strike a juror for cause.

On September 18, 1991, James and Marilyn, along with their friend, Doris Rice, went to the Hospital to visit Marilyn's father. While waiting to see him, James sat and began to lean back in a reclining chair in the waiting room when the chair flipped over, causing him to strike his head and neck against the wall and floor. The Hospital's doctor immediately examined James and determined that he was not seriously hurt. Days later, James consulted his private doctor and subsequently underwent surgery, incurring medical costs exceeding $23,000 and lost wages of $18,000. The Lucases filed this suit on November 16, 1992.

Immediately after James fell, Rosewell, the hospital's maintenance supervisor, and Carlisle, the hospital's carpenter and security guard, inspected the recliner and found nothing wrong with the chair. The men removed the chair and stored it in the Hospital Annex. Three months later, at the Hospital's request, mechanical engineer Robert Krafft inspected the chair and found no defects. He photographed the recliner and drafted a report of his findings, all of which were furnished to the Lucases. During the hospital's expansion in either late 1992 or early 1993, the chair was moved to the maintenance tunnel. In 1994, when Rosewell removed the chair from the maintenance tunnel so that Larry Smith, the Lucases' expert witness, could inspect it for the first time, Rosewell discovered that the chair's lever arm was broken. Rosewell testified at trial that he had overheard plumbers say they broke the chair during the hospital's expansion when they stood on the recliner's lever and arm to reach an overhead pipe.

## FAILURE TO SUPPLEMENT DEPOSITION AND INTERROGATORIES

The Lucases complain that because the Hospital failed to supplement interrogato-

ries[1] notifying them of additional persons with knowledge of relevant facts, namely the plumbers, and because the Hospital failed to supplement deposition testimony notifying them that the prior deposition testimony of Rosewell and Standridge, the Hospital's representative, was wrong and misleading,[2] it was error for the court to overrule their Motion to Strike and Motion for Mistrial. Approximately eighteen months after interrogatories were answered, depositions were taken in which Rosewell and Standridge stated that the chair was in the same condition on the day of the deposition as it had been on the day of James's fall. However, three months after these depositions were taken, but shortly before the Lucases' expert witness, Smith, was to examine the chair, Rosewell discovered that the lever on the chair was broken. At trial, over the Lucases' objection, Rosewell and Standridge testified to the chair's changed condition. Because of this new testimony at trial, which was introduced *after* Smith testified, basing his opinion solely on the chair's broken condition, the Lucases contend that they were prevented from properly evaluating the evidence and presenting their case.

Initially, we concluded that the Lucases had waived any right to complain because they had not brought this matter up at a pretrial hearing pursuant to *Remington Arms Co. v. Caldwell.*[3] The *Remington Arms* case was a case in which the pleadings of the party were stricken as a sanction. The court in the *Remington Arms* case provides that the trial court has the power during the trial to exercise other sanctions. In the present case, we have carefully studied the record and find that the Titus County Hospital District and the Titus County Me-

morial Hospital did not raise the matter of waiver at trial or on appeal. Furthermore, because of the specific language of the rule on failure to supplement and the cases thereon, the matter of waiver may not be applicable to this specific discovery matter. We decline, therefore, to address this case on the basis of waiver, but rather address it specifically on the rule in point and the applicable cases on that rule.

■ First, the Hospital contends that the Lucases have not perfected error for appeal because they did not introduce the three depositions into the record or offer them as bills of exception. Therefore, there is no basis for review upon which this Court can compare in determining whether the deposition testimony conflicts with the testimony at trial,[4] thereby triggering the issue of whether supplemental discovery was necessary. However, Standridge and Rosewell testified at trial that their deposition testimony of the chair's condition differed from that of their trial testimony regarding the same. This testimony is sufficient evidence upon which to make a comparison, and therefore a basis for review exists.

■ Second, the Hospital asserts that error was not preserved when the Lucases objected to Standridge's testimony because (1) the Lucases failed to make a timely request, objection, or motion stating the specific objection, and (2) the Lucases failed to obtain a ruling.[5]

Rule 103 of the Rules of Civil Evidence requires a timely objection to preserve error on the admission of evidence. We have studied the context of the objection made to the evidence in question. Although no objection was made at the first mention that the chair

---

1. Interrogatory No. 1 reads as follows:

 With respect to each person that you believe may have knowledge, either directly or indirectly, relating to any facts underlying any of the issues, claims, or defenses of any party in the present action, please:
 (a) Identify each such person; and
 (b) State the area of knowledge that is believed to be held by each such person.

2. Although the Lucases include Carlisle's testimony in this point of error, unlike Standridge and Rosewall, Carlisle's trial testimony only con-

cerned his inspection of the chair on the day James fell, not the condition of the chair on any later date.

3. 850 S.W.2d 167, 170–71 (Tex.1993).

4. *See McInnes v. Yamaha Motor Corp.,* 673 S.W.2d 185, 187 (Tex.1984) (holding that error was not perfected because deposition testimony was not offered in formal bills of exception or in statement of facts).

5. *See* TEX.R.APP. P. 52(a).

had been broken, neither the questions nor the responses made prior to the objection indicated that the witness was taking the position that the chair was broken during the time it was in storage. Until a question or answer clearly shows that the evidence is improper, counsel has not waived his right to object when impropriety and the question or answer affects the admissibility. The basic conflict about which the Lucases complain was that their expert had based his opinion that the condition of the chair was the same as it was at the time it was placed in storage. These preliminary questions and answers did not inform the jury that the witness was not taking the position that the broken condition was caused by other parties after the accident.

■ In the present case, Blount, the Lucases' attorney, told the court at trial that he was "not told this was going to come up until about two weeks or a week before the trial." Although the Hospital did not supplement discovery in writing to reflect the changed testimony and was subject to discovery sanctions because it did not show good cause for failure to supplement,[6] the record shows that the Lucases' attorney was aware of the chair's changed condition up to two weeks before trial.[7]

The Hospital's attorney also told the court, "I have no duty to supplement a deposition, Your Honor. There's notes in my file where

I told Mr. Blount in July '94, before his expert came in, that the chair had been broken."

Counsel for the Lucases stated that nobody had notified the plaintiffs, and the matter about the chair being broken by third parties was a whole new line of inquiry.

Again, counsel for the Hospital stated, "Your Honor, as an officer of the court I will tell you that I advised Mr. Blount in July '94 that that chair had been broken before his expert ever went out there."

Counsel for the Lucases immediately took a contrary position stating, "And I take no pleasure in this, Your Honor, but as an officer of this court I will tell you that I received no such notice."

■ First, we must examine to see if a general statement made by one counsel to another constitutes a supplementation of discovery. We find that it does not. A written supplementation *should be filed in the same form as the answers to the original interrogatory.* This avoids disputes as to what was said by whom in some type of oral statement made by one attorney to the other.[8] We conclude that there was no supplementation made in this case. Once the trial court determines that a party has failed to supplement as required, the evidence must be excluded unless the trial court finds good cause.[9]

6. Texas Rule of Civil Procedure 166b(6) provides, in part, that a party who has responded to a request for discovery must supplement his response "if he obtains information upon the basis of which he knows that the response though correct and complete when made is no longer true and complete and the circumstances are such that failure to amend the answer is in substance misleading." Knowledge of fact witnesses falls squarely within this rule. The failure of a party to supplement answers to interrogatories results in the automatic exclusion of testimony of an unidentified witness. TEX.R. CIV. P. 215(5).

7. Blount, the Lucases' counsel, stated during his objection,

What we were told approximately a week ago or two weeks ago was that Mr. Krafft was going to come before the Court and say that he had inspected the chair both in 1991 and had gone back out for—had gone back out just

recently to look at it and he was going to testify that he checked that arm and it was not broken when he looked at it in September of 1991. Now all of a sudden, ... we've got a great story going that low (sic) and behold this thing got busted.

8. *See Varner v. Howe,* 860 S.W.2d 458 (Tex.App.-El Paso 1993); *see also Dawson–Austin v. Austin,* 920 S.W.2d 776 (Tex.App.-Dallas 1996, writ granted) (In *Dawson–Austin,* the court held that a letter from the exwife's attorney to the exhusband's attorney enclosing a copy of the testing report of a child and putting the exhusband's attorney on notice that the exwife's attorney was amending and supplementing earlier answers to interrogatories was insufficient to be considered supplemental answers to the interrogatories because it did not meet the formal requirements of the rule governing interrogatories to parties.)

9. *Melendez v. State,* 902 S.W.2d 132 (Tex.App.-Houston [1st Dist.] 1995, no writ).

■ The Hospital takes the position that there was no surprise or ambush because the Lucases, by notice to their attorney, had been advised of the circumstances leading to the change in these witnesses' testimony. In *Patton v. St. Joseph's Hospital*,[10] the court held that lack of surprise, unfairness, or ambush without other factors does not show good cause for failure to supplement discovery.[11] The Supreme Court held in *Sharp v. Broadway National Bank*[12] that even though there is no surprise in claim of unfairness by the late designation of an expert witness, this was not good cause under the rule.[13] The Corpus Christi court in *Ramos v. Champlin Petroleum Co.*[14] held that a finding of good cause is not satisfied by showing lack of surprise or that the witness has already been deposed.[15] As the Supreme Court said in *Morrow v. H.E.B., Inc.*,[16] the absence of surprise, unfairness, or ambush does not satisfy the good cause exception to the sanction of automatic exclusion.[17] The clear message from the Supreme Court and the rule itself is that a lack of surprise, unfairness, or ambush is not good cause for failure to supplement discovery.

■ We find that good cause was not shown by the failure to supplement discovery. It was error for the trial court to fail to strike the testimony of Standridge and Rosewell because no supplementation was made as required by the rule, and thus, exclusion of the evidence by these witnesses was required. The condition of the chair was an important element in this case. The Lucases' expert based his opinion on the condition of the chair as it was presented to him for examination without being made aware of the later claim of damages. At the court's request, counsel for the Hospital District and the Hospital submitted an excellent brief in response to the Motion for Rehearing. However, this brief addresses the lack of surprise concerning the changed position by these witnesses and the opportunity to cross-examine, impeach, and rebut this testimony. As we have indicated in the opinion, this is not an exception to the sanction of automatic exclusion. Furthermore, the primary importance of this new evidence is that the Lucases' only expert bases his opinion about the condition of the chair on the erroneous assumption that the chair was still in the same condition that it was at the time of the occurrence in question. We sustain this point of error.

## MOTION FOR MISTRIAL

The Lucases next assert that the court erred in overruling their Motion for Mistrial. However, the record shows that at the conclusion of all evidence presented, but before the jury charge was read, Blount informed the court that the Lucases told him not to make the motion. The record does not indicate that the Lucases later changed their minds, nor does it reflect the court's ruling. Because the record does not show that the court made a ruling on the Motion for Mistrial, the court could not have abused its discretion. These points of error are overruled.

## FACTUAL INSUFFICIENCY

The Lucases assert that the evidence is factually insufficient to support the jury's failure to attribute negligence to the Hospital because the three eyewitnesses, James Lucas, Marilyn Lucas, and Doris Rice, provided uncontroverted testimony concerning the accident, which the jury had no authority to ignore.

■ When reviewing a jury verdict to determine the factual sufficiency of the evidence, the appellate court must consider and

**10.** 887 S.W.2d 233 (Tex.App.-Fort Worth 1994, writ denied).

**11.** *Id.* at 239.

**12.** 784 S.W.2d 669 (Tex.1990).

**13.** *Id.* at 671–72.

**14.** 750 S.W.2d 873 (Tex.App.-Corpus Christi 1988, writ denied).

**15.** *Id.* at 876–77.

**16.** 714 S.W.2d 297 (Tex.1986) (cited in *Lopez v. Foremost Paving, Inc.*, 796 S.W.2d 473 (Tex.App.-San Antonio 1990, writ dism'd w.o.j.)).

**17.** *Id.* at 298.

weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.[18] Further, it is the appellant who has the burden of proving that the adverse finding is against the great weight and preponderance of the evidence.[19]

■ The Hospital argues that just because there is eyewitness testimony does not mean that the jury was precluded from questioning the credibility of those witnesses or considering other testimony about how James incurred his injuries. The Hospital points to much evidence to support the jury's finding, including the following:

(1) prior to James's fall, there were no reports of defects or problems with the chair,

(2) maintenance men routinely inspect the Hospital's premises for safety hazards, and housekeepers clean and move the furniture daily, also looking for potential hazards,

(3) Carlisle and Rosewell inspected the chair immediately following the incident and found no problems,

(4) Krafft thoroughly inspected and photographed the recliner three months after James fell and found no defects with it,

(5) Krafft told the jury that Smith's expert opinion did not appear to coincide with the evidence that Krafft had reviewed, including the depositions of the three eyewitnesses of how James fell,

(6) Smith testified that when he inspected the chair years after James's fall, it took two hands to force the lever into position so that the chair would recline (James's arm was in a sling when he fell),

(7) Smith testified that he could only confirm the chair's condition as it was in 1994, not 1991, and

(8) notwithstanding the linchpin of Smith's hypothesis, which was that for James to have fallen, he would have had to

pull the chair's lever arm, and that arm would have had to come loose, the eyewitnesses' testimony contradicts Smith's testimony because James stated that he "didn't even hardly lean back," Rice stated that he "was just sitting down in the recliner and [it] just went over backward," and Marilyn stated that she did not recall James pulling the lever arm.

The record shows the eyewitnesses' testimony was controverted by the Lucases' own expert witness and the Hospital's expert witness. Because the Lucases have failed to meet their burden of proof and because the evidence is sufficient to support the jury's verdict, these points of error are overruled.

## JURY QUESTION

■ The Lucases contend that the court erred in submitting a question to the jury because the question required a finding of premises liability in spite of the Lucases' theory of simple negligence. They assert that the court's instruction raised the level of proof required of the Lucases and added additional criteria for a finding of negligence, thereby improperly confusing and prejudicing the jury.

Although this point of error could be overruled on this basis alone, the Hospital also asserts that the submission of the question to the jury was proper because Texas Rule of Civil Procedure 278 provides that "[t]he court shall submit the questions ... in the form provided by Rule 277, which are raised by the written pleadings and the evidence."[20]

In this case, Question No. 1 reads as follows:

Did the negligence, if any, of TITUS COUNTY MEMORIAL HOSPITAL proximately cause the occurrence in question?

With respect to the condition of the premises, TITUS COUNTY MEMORIAL HOSPITAL was negligent if:

(a) the chair was unsafe; and

---

**18.** *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

**19.** *Hickey v. Couchman,* 797 S.W.2d 103, 109–10 (Tex.App.-Corpus Christi 1990, writ denied).

**20.** Tex.R. Civ. P. 278.

(b) the chair created an unreasonable risk of harm to JAMES LUCAS; and

(c) TITUS COUNTY MEMORIAL HOSPITAL knew, or in the exercise of ordinary care should have known, that the chair was unsafe; and

(d) TITUS COUNTY MEMORIAL HOSPITAL's failure to remove the chair or to warn JAMES LUCAS that the chair was unsafe was a failure to exercise ordinary care.

Answer "YES" or "NO"

Answer: _____

 Lucas urges that the trial court's failure to submit the case to the jury on simple negligence principles instead of instructing the jury as to premises liability was error. Premises liability stems from the law of negligence.[21] It is the body of law that sets the guidelines involving duties owed by an owner or occupier of real estate to protect persons who enter that real estate from injury because of dangerous conditions and defects. It is true that a negligent activity is often more advantageous to the plaintiff than a premise liability theory because of additional elements that the plaintiff may be required to prove. The negligent activity theory of liability applies when the person was injured by or as a contemporaneous result of the activity itself. If the plaintiff was injured by a condition created by the activity rather than the activity itself, the plaintiff is limited to the premises liability theory of recovery.[22]

 Texas courts have found this distinction between negligence and premises liability cases: "Cases involving potential liability for an on-premises *activity* 'are properly charged as typical negligence cases,' while cases involving potential liability for an on-premises *defect* are properly charged as premises liability cases."[23]

In 1902, the Court of Appeals addressed a case[24] in which injuries were caused by the falling of seats that had been negligently constructed. In that case, the court discusses the facts in terms usually applied to premise liability cases.[25] In a case involving the collapse of a waiting room chair[26] and in a case involving a fall from an examining chair,[27] two courts from other jurisdictions address these situations as premise liability cases. We have determined that the trial court did not err in addressing the present case as a premises liability case because it was the Lucases' contention that the chair was broken or defective before the time of the fall, thus the alleged cause of action was based upon James Lucas being injured by a condition created when the hospital negligently put the broken chair in the waiting room; he was not injured by the hospital's activity when putting the chair in the room. This point of error is overruled.

## DAMAGES

 The Lucases also contend there is a factual insufficiency to support the jury's findings that James and Marilyn suffered no damage and that those findings were against the overwhelming weight of the evidence. Further, they assert that the jury's findings on damages to James and Marilyn were inadequate. Although the Lucases assert a *factual* insufficiency, their points of error are labeled as "no evidence"[28] points. Because

21. J. Hadley Edgar, Jr. & James B. Sales, Texas Torts & Remedies § 20.01 (1997).

22. *Id.* (citing *Stanley Stores, Inc. v. Veazey*, 838 S.W.2d 884, 886 (Tex.App.-Beaumont 1992, writ denied) where woman who slipped in puddle originating in soft drink display, which was ongoing at time of fall, was not entitled to negligent activity submission because fall was caused by condition created by activity (puddle) rather than by activity itself.)

23. *Cain v. Cain*, 870 S.W.2d 676, 682 (Tex.App.-Houston [1st Dist.] 1994, writ denied) (citing *Physicians and Surgeons Gen. Hosp. v. Koblizek*, 752 S.W.2d 657 (Tex.App.-Corpus Christi 1988, writ denied)).

24. *Texas State Fair v. Marti*, 30 Tex.Civ.App. 132, 69 S.W. 432 (1902).

25. 69 S.W. at 433.

26. *Dawson v. MetroHealth Ctr.*, 104 Ohio App.3d 654, 662 N.E.2d 1123 (1995).

27. *Bernthal v. Aetna Cas. & Sur. Co.*, 195 Mich. App. 501, 491 N.W.2d 236 (1992).

28. If an appellant is attacking the legal sufficiency of an adverse finding on an issue on which he had the burden of proof, it is a "matter of law" challenge, not a "no evidence" challenge, and the appellant must demonstrate on appeal that

of this discrepancy, and although the Hospital only responds to *legal* insufficiency, we will analyze both challenges.

When an appellant challenges both the legal and factual sufficiency of the evidence supporting a jury's finding, the appellate court should first review the legal sufficiency challenge.[29] In a jury trial, challenges to the legal sufficiency of the evidence are preserved by either (1) a motion for instructed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue, or (5) a motion for new trial specifically raising the complaint.[30]

The Lucases filed their Motion for New Trial; however, because they did not allege any *legal* sufficiency challenges on the issues of liability or damages in that motion, to the extent that the Lucases are attacking the *legal* sufficiency in these points of error, that challenge has been waived.

In a jury trial, a complaint of factual insufficiency must be raised in a motion for new trial.[31] In this case, the Lucases complained of *factual* insufficiency in their Motion for New Trial, stating that the jury's findings were against the overwhelming weight of the evidence. In examining a factual insufficiency point, the reviewing court considers all evidence to determine whether the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust.[32]

With regard to the issue on damages, the Lucases point to evidence of James's subsequent back surgery and pain suffered because of that surgery, the necessity of his wearing a back brace, medical costs totaling $23,000, lost wages totaling $18,000,

and Marilyn's loss of services and consortium. With regard to causation, the Lucases point to Dr. Bland's testimony, wherein he states that the injuries James sustained in that fall caused him to undergo back surgery. The Lucases assert that this evidence and the jury's findings are so inapposite that they demonstrate the jury's passion, prejudice, or evidentiary disregard.

However, in considering a "no evidence," "insufficient evidence," or "against the great weight and preponderance of the evidence" point of error, the following test should be applied:

In an action based on the defective condition of the premises, the plaintiff has the burden to prove (1) that the defendant, owner or occupier of the premises, had actual or constructive knowledge of some condition on the premises; (2) that the condition posed an unreasonable risk of harm to the plaintiff; (3) that [the] defendant did not exercise reasonable care to reduce or to eliminate the risk; and (4) that the defendant's failure to use such care proximately caused plaintiff's personal injuries.[33]

In the slip and fall case of *Taylor v. Albertsons, Inc.*,[34] wherein the plaintiff slipped on a stick of butter on the store's loading ramp, the court held that the plaintiff failed to meet his burden to prove by competent evidence to the satisfaction of the jury that the store either knew or should have known the butter was on the ramp.[35] Although the store asserted that the butter fell off the load being carried by the plaintiff, the court noted that because the ramp was not physically isolated from the outside world, other reasons for the butter's presence were conceivable.[36]

the evidence conclusively established all vital facts in support of the issue.

**29.** *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981).

**30.** *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 220 (Tex.1992).

**31.** Tex.R. Civ. P. 324(b)(2), (3); Tex.R.App. P. 52(d).

**32.** *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986).

**33.** *Taylor v. Albertsons, Inc.*, 814 S.W.2d 83, 85 (Tex.App.-Corpus Christi 1991, writ denied).

**34.** 814 S.W.2d 83.

**35.** *Id.* at 86.

**36.** *Id.*

The Lucases have not proven that the Hospital had actual or constructive knowledge that on the day of James's fall, the chair was broken. Considering all evidence of liability, including the Hospital's evidence presented in the eighth and ninth points of error above, Rosewell's and Krafft's testimony that they found no damage to the chair immediately after James's fall and the chair's location in a public area of the hospital, the jury's finding of no liability is not so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. Without an erroneous finding of liability, it necessarily follows that the awarding of no damage was also not erroneous. These points of error are overruled.

## RES IPSA LOQUITUR

The Lucases assert that the court erred in refusing to submit Plaintiff's Requested Special Issue No. 1 on the issue of *res ipsa loquitur* to the jury because there was evidence (1) that James's fall, wherein he simply sat in the chair and it flipped over, was of the type that would not occur ordinarily in the absence of negligence, and (2) that it was uncontested that the chair was under the management and control of the Hospital. Because of this evidence, the Lucases assert that the jury should have at least been allowed to consider *res ipsa loquitur*.

■ The doctrine of *res ipsa loquitur* is used in certain limited cases when the circumstances surrounding the accident constitute sufficient evidence of the defendant's negligence to support that finding.[37] It is not a separate cause of action from negligence; rather, it is simply a rule of evidence by which negligence may be inferred by the jury.[38] The doctrine only applies when two factors are present: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence, and (2)

the instrumentality causing the injury is shown to have been under the management and control of the defendant.[39] To rely on the doctrine, the plaintiff must produce evidence from which the jury can conclude, by a preponderance of the evidence, that both factors are present.[40]

■ In the present case, neither factor has been proven to exist. With regard to the first prong, in *Soto v. Texas Industries*,[41] the appellate court held that the plaintiffs were not entitled to a *res ipsa loquitur* instruction because there was testimony that there could be additional reasons why a concrete wall might fall on an individual, including vandalism, high winds, a supporting brace may be knocked down, or its foundation could collapse.

The Lucases' expert witness testified that he believed anything can make a chair tip over if the weight is placed in a proper position. For example, Smith testified that children playing on a recliner is an activity that could cause the chair to turn over. Additionally, Smith recalls an incident wherein a clap of thunder caused his dog to jump onto his wife, who was seated in a recliner, and the force of the dog jumping caused the chair to topple over. In sum, because other reasons can ordinarily occur outside that of the Hospital's negligence that could make a recliner tip over, the special issue on *res ipsa loquitur* was properly refused.

The Hospital also contends that the recliner was not under the Hospital's exclusive control, citing *LeBlanc, Inc. v. Gulf Bitulithic Co.*[42] and *Marathon Oil Co. v. Sterner*.[43] In the former case, the court held that *res ipsa loquitur* was inapplicable because numerous parties, aside from the defendants, worked near the place where the pipeline rupture occurred and more than one party had control over that area. In the latter case, the Texas Supreme Court determined

**37.** *Haddock v. Arnspiger,* 793 S.W.2d 948, 950 (Tex.1990).

**38.** *Id.*

**39.** *Id.*

**40.** *Soto v. Texas Industries, Inc.,* 820 S.W.2d 217, 219 (Tex.App.-Fort Worth 1991, no writ).

**41.** 820 S.W.2d 217.

**42.** 412 S.W.2d 86 (Tex.Civ.App.-Tyler 1967, writ ref'd n.r.e.).

**43.** 632 S.W.2d 571 (Tex.1982).

that the plaintiff had not shown that the defendant had exclusive control because an independent contractor had cleaned the premises shortly before the injury occurred.[44] Although both of those cases involved contractors and subcontractors, the analysis is the same. The possibility of causes for the accident, outside of the defendant's negligence, does not have to be eliminated, but the likelihood of other causes must be so reduced that the jury can reasonably find that the negligence, if any, was committed by the defendant.[45] Because the chair was in a public waiting area, it is possible that someone other than the Hospital broke the recliner before James fell, if it was broken at that time. This point of error is overruled.

## JURY QUESTION AND SPECIAL CHARGE

■ The Lucases assert that the court (1) erred in submitting Question No. 2 to the jury because it was misleading and (2) erred in refusing to submit their Requested Special Charge No. 7 to the jury. Both the question and the charge concerned the amount of damages, if any, the jury could award for physical pain and mental anguish, loss of earning capacity, physical impairment, and medical care.

The Lucases' Requested Special Jury Charge No. 7 stated the following:

The law of Texas provides that the Lucas' [sic] right to recover and the measure of damages, if any, which may be awarded are not to be affected in any way by the fact that Mr. Lucas had received a former injury to his back.

The Lucases contend that because of James's two prior back surgeries, it was imperative that the jury understand that Texas law requires that his right to receive damages is unaffected by prior medical surgeries or problems.[46] Because of the importance of that understanding, the Lucases tendered Requested Special Jury Charge No. 7.

However, the court gave the following jury instruction in Question No. 2:

Do not include any amount for any condition existing before the occurrence in question, except to the extent, if any, that such other condition was aggravated by any injuries that resulted from the occurrence in question.

The Lucases assert that because Question No. 2 was conditioned, it impermissibly emphasized James's former injuries and was calculated to cause the jury to disregard the injuries he sustained from the present case. They further assert that, at a minimum, both statements should have been given so that jurors would know that while they were prohibited from granting damages for previous injuries, they were also not allowed to limit damages on the present injury because of previous injuries.

■ Because the Lucases complain that the instruction in Question No. 2 was improper, we must determine whether the decision to submit that instruction was an abuse of the trial court's considerable discretion[47] in determining the sufficiency of explanatory instructions and definitions.[48] When instructions or definitions are given, the question upon review is whether the instruction is proper.[49] Proper instructions are those which aid the jury in answering the issues submitted.[50] The instruction in Question No. 2 was proper because it provided some assistance to the jury in answering the submitted question, namely that they were to include amounts of preexisting conditions only to the

**44.** *Sterner,* 632 S.W.2d at 573–74.

**45.** *Id.* at 574.

**46.** *Thompson v. Quarles,* 297 S.W.2d 321, 330 (Tex.Civ.App.-Galveston 1956, writ ref'd n.r.e.) (quoting *Driess v. Friederick,* 73 Tex. 460, 11 S.W. 493, 494 (1889)).

**47.** *Louisiana & Arkansas Ry. Co. v. Blakely,* 773 S.W.2d 595, 598 (Tex.App.-Texarkana 1989, writ denied).

**48.** *Id.*

**49.** Tex.R. Civ. P. 277; *M.N. Dannenbaum, Inc. v. Brummerhop,* 840 S.W.2d 624, 631 (Tex.App.-Houston [14th Dist.] 1992, writ denied).

**50.** *Blakely,* 773 S.W.2d at 598.

extent that those injuries were aggravated by James's fall from the chair.

 However, because the Lucases also complain that the instruction was a comment on the weight of the evidence,[51] we must also apply a *de novo* standard of review.[52] The comment must be one that probably caused the rendition of an improper judgment.[53] Incidental comments are permissible when necessary or proper as part of an explanatory instruction.[54] In determining whether an alleged error in the jury charge is reversible, the reviewing court must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety.[55] Alleged error is deemed reversible only if, when viewed in the light of the totality of these circumstances, it amounted to such a denial of the rights of the complaining party as was reasonably calculated, and probably did cause, the rendition of an improper judgment.[56]

In this case, James testified at trial to previous back injuries and two surgeries. In reviewing the pleadings, evidence, and charge in its entirety, the Lucases did not suffer an improper judgment. Even if a comment existed in the instruction because it exaggerated the preexisting condition, the comment was incidental or necessary, and therefore permissible.

 As to the Lucases' Requested Special Charge No. 7, when the trial court refuses to submit a requested instruction, the question on review is whether the requested instructions were so necessary to enable the jury to properly render a verdict that the court's refusal to so instruct the jury probably did cause the rendition of an improper verdict.[57] The Lucases' requested instruction was not so necessary that an improper verdict ensued.

These points of error are overruled.

## CHALLENGE FOR CAUSE

 The Lucases assert that notwithstanding juror Bobbie Carter's statement that she could be fair and impartial, she should have been stricken for cause solely because she was an employee of the Hospital, which created an inherent bias and conflict, thereby rendering her incompetent.

In *Preston v. Ohio Oil Co.*,[58] the court found that an employee of a party was incompetent to act as a juror.[59] The venireman stated during voir dire that he was employed by one of the defendants. He also stated that, although he could be fair and impartial, he preferred not to serve as a juror, giving no reason for this preference.[60] The trial court overruled the plaintiff's challenge for cause, which had the practical effect of partially denying the plaintiff's right to peremptory challenges. The appellate court found the trial court's action was material error.[61]

 However, a trial court's refusal to excuse an unqualified juror does not necessarily constitute harmful error.[62] Harm oc-

---

**51.** *See American Bankers Ins. Co. v. Caruth*, 786 S.W.2d 427, 434 (Tex.App.-Dallas 1990, no writ)(finding impermissible comment on weight of evidence when, after examining entire charge, it is determined that judge assumes truth of controverted fact, or exaggerates, minimizes, or withdraws some pertinent evidence from jury's consideration).

**52.** *See id.* at 434–35 (applying *de novo* review and finding that instruction did comment on weight because it implied that judge thought law and facts favored one party and that party should be compensated commensurately).

**53.** *Id.* at 434.

**54.** *Id.*

**55.** *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex. 1986).

**56.** *Id;* Tex.R.App. P. 81(b)(1).

**57.** *Steinberger v. Archer County*, 621 S.W.2d 838, 841 (Tex.App.-Fort Worth 1981, no writ).

**58.** 121 S.W.2d 1039 (Tex.Civ.App.-Eastland 1938, writ ref'd).

**59.** *Id.*at 1041–42 (stating that employee of party in lawsuit is incompetent to be juror, especially one who may be discharged at will and is economically dependent upon that employment).

**60.** *Id.* at 1040.

**61.** *Id.* at 1043.

**62.** *Hallett v. Houston Northwest Med. Ctr.*, 689 S.W.2d 888, 889–90 (Tex.1985).

curs only if the party uses all of their peremptory challenges and is thus prevented from striking other objectionable jurors because he has no additional peremptory challenges.[63] Additionally, the complaining party must inform the court that objectionable jurors will be chosen.[64] Failure to notify the trial court of these two facts constitutes a waiver of the right to complain of the trial court's refusal to discharge a juror challenged for cause.[65]

In the present case, the record does not reflect that the Lucases used all their peremptory challenges or that they notified the trial court that they used all their peremptory challenges. Because the Lucases have failed to properly object to the court's failure to strike Carter for cause, they have waived any error. This point of error is overruled.

Because the trial court did not properly exclude and strike the testimony of the witnesses whose discovery was not supplemented as required by the rule, we reverse and remand this case for a new trial.

## ON MOTION FOR REHEARING

The Hospital continues to urge on rehearing that a supplementation of the discovery was not required in this case. The Hospital contends that the rule of supplementation does not apply to fact witnesses and places too great a burden on the parties. We disagree. The rule does not provide an exception for fact witnesses. In a case where the failure to supplement goes to a salient issue in a case, as it does in the present case, the rule requires supplementation. In the present case, Standridge testified in her deposition that she told the Lucases' expert that the chair was in exactly the same condition that it was on September 18, 1991, which was the date of the occurrence in question. She added that the chair might have become a little dusty, but otherwise it was in the same condition. The Lucases' expert relied upon this representation in examining the chair

and making his conclusions about its condition. When the Hospital discovered the error of this statement, the Lucases should have been notified. The condition of the chair went to the heart of the Lucases' case, and this is the type of supplementation that should be made.

The Hospital also urges on rehearing that failure to strike the testimony of Standridge and Rosewell was not reversible error. A number of cases have applied Rule 81(b) of the Rules of Appellate Procedure to discovery errors.[66] Specifically, in the case of *Ramirez*, the court held that failure to strike testimony that was cumulative probably did not cause the rendition of an improper judgment and did not constitute a reversible error.

In the present case, the Hospital contends that the photographs of the chair at the time of the occurrence and the contrast between its expert and the expert of the Lucases show that the chair was not in the same condition. We do not deem this evidence to be the type of evidence to render the error harmless.

The Lucases' expert was placed in the position of believing that the chair was in the same condition as it was at the time of the occurrence in question. Thus, he was in a position to be discredited because he believed the lever was broken at the time, he was placed in a position of disputing the testimony of Lucas, he was placed in a position of sounding as if he had examined a different chair from the one examined by the Hospital expert, and he was not in the position to reach an opinion about the chair at the time of the occurrence in question, which was the main focus of the case. This denied the Lucases the right to make a proper presentation of their case to the trial court and thus, to the appellate court for review. Admitting the evidence of these two witnesses resulted

63. *Id.* at 890.

64. *Id.*

65. *Id.*

66. *See Ricardo N., Inc. v. Turcios de Argueta,*870 S.W.2d 95 (Tex.App.-Corpus Christi 1993), *rev'd*

*on other grounds,* 907 S.W.2d 423 (Tex.1995); *Westfall Family Farms, Inc. v. King Ranch, Inc.,* 852 S.W.2d 587 (Tex.App.-Dallas 1993, writ denied); *Ramirez v. Otis Elevator Co.,* 837 S.W.2d 405 (Tex.App.-Dallas 1992, writ denied).

in a significant disadvantage to the Lucases. We find this to be reversible error.

In the interest of fairness, a retrial of this case is required, after the Lucases' expert has had an opportunity to examine the chair, knowing of the change in the chair's condition after the occurrence in question. The motion for rehearing is overruled.