Opinion issued July 10, 2008






 





 










In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00567-CV






THE KROGER COMPANY, Appellant


V.


SYLVIA R. PERSLEY, Appellee






On Appeal from the 129th District Court

Harris County, Texas

Trial Court Cause No. 2004-51490







OPINION

 Sylvia R. Persley, appellee, sued The Kroger Company and Blue Bell
Creameries, Inc. (1) after she slipped and fell in a Kroger store. The trial court entered
final judgment against Kroger after a jury found Kroger 65% liable and Blue Bell
35% liable on Persley's negligent activity claim. 

 In four issues, Kroger argues that the final judgment was improper because
(1) there is no evidence to support the submission of a negligent activity claim as to
Kroger to the jury, (2) the evidence is factually insufficient to support the submission
of a negligent activity claim as to Kroger, (3) there are no pleadings to support the
submission of a negligent activity claim as to Kroger, and (4) the trial court erred in
failing to submit an issue regarding Persley's proportionate responsibility for her
injury. We reverse and render.

Background

 Persley was shopping with her daughter, Tara Persley ("Tara"), at a Kroger
store located on Aldine Mail Route in Houston, Texas. As Persley approached a
freezer display for Blue Bell ice cream, she slipped and fell. The freezer display was
an "end cap" or "frozen food" freezer located in the front of the store near the cash
registers between Aisles 7 and 8. 

 Both Gilberto Luis, Kroger's Frozen Food Manager, and Victor Palermo, a
Blue Bell employee, were stocking frozen food in the store on the day Persley fell. 
A Kroger employee, who arrived at the scene after Persley fell, testified that she saw
water on the floor in the area where Persley fell. Persley brought this action against
both Kroger and Blue Bell asserting claims for premises-defect and negligent activity. 

 The trial court found that there was no evidence of the notice element on the
premises-defect claim and granted a directed verdict in favor of Kroger on this claim. 
However, the trial court submitted the negligent activity claim against Kroger to the
jury. (2) The jury found Kroger 65% liable and Blue Bell 35% liable on the negligent
activity claim and the trial court entered final judgment against Kroger. This appeal
follows.

Jury Submission

 In issues one and two, Kroger complains that the trial court erred in entering
judgment as to Kroger on a negligent-activity theory because there was no evidence
or factually insufficient evidence to submit this claim to the jury. 

Standard of Review

 When both no-evidence and factual sufficiency points of error are raised, we
must address the no-evidence issue first. Glover v. Tex. Gen. Indem. Co., 619 S.W.2d
400, 401 (Tex. 1981). When we review a "no evidence" point of error, we must view
the evidence in the light most favorable to the party in whose favor the jury entered
verdict and indulge every reasonable inference deductible from that evidence in favor
of that party. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001). A no-evidence
issue will be sustained when the record discloses that: (1) there is a complete absence
of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact, (3) the evidence
offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence
conclusively establishes the opposite of the vital fact. Merrell Dow Pharms. v.
Havner, 953 S.W.2d 706, 711 (Tex. 1997). If there is more than a scintilla of
evidence to support the finding, the no-evidence challenge fails. Stafford v. Stafford,
726 S.W.2d 14, 16 (Tex. 1987). When the evidence offered to prove a vital fact is so
weak as to do no more than create a mere surmise or suspicion of its existence, the
evidence is not more than a scintilla and, in legal effect, is no evidence. Kindred v.
Con-Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence
exists where the evidence supporting the finding, as a whole, rises to a level that
would enable reasonable and fair-minded people to differ in their conclusions. 
Havner, 953 S.W.2d at 711.

 Only one standard of review is used in reviewing factual sufficiency
challenges, regardless of whether we are reviewing a negative or affirmative jury
finding or whether the complaining party had the burden of proof on the issue. M.J.
Sheridan & Son v. Seminole Pipeline Co., 731 S.W.2d 620, 623 (Tex. App.--Houston
[1st Dist.] 1987, no writ). We must first examine all of the evidence, and, having
considered and weighed all of the evidence, we should set aside the verdict only if the
evidence is so weak or the finding is so against the great weight and preponderance
of the evidence that it is clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965); Otis Elevator Co. v.
Joseph, 749 S.W.2d 920, 923 (Tex. App.--Houston [1st Dist.] 1988, no writ). 
Because the trier of fact is the sole judge of the credibility of the witnesses and the
weight to be given their testimony, in conducting a factual sufficiency review, we
may not substitute our opinion for that of the trier of fact merely because we might
have reached a different fact conclusion. Herbert v. Herbert, 754 S.W.2d 141, 144
(Tex. 1988); Rego Co. v. Brannon, 682 S.W.2d 677, 680 (Tex. App.--Houston [1st
Dist.] 1984, writ ref'd n.r.e.).

Negligent Activity Theory "Before submitting a negligent activity theory of recovery, a trial court should
first consider from the evidence and the pleading if the injury was created by and
contemporaneous to an ongoing activity." See Stanley Stores, Inc. v. Veazey, 838
S.W.2d 884, 886 (Tex. App.--Beaumont 1992, writ denied). A trial court should not
submit a negligent activity claim to the jury unless the evidence shows that the injury
was caused by or was a contemporaneous result of the negligent activity itself rather
than a condition created by the negligent activity. Id. at 886; Keetch v. Kroger Co.,
845 S.W.2d 262, 264 (Tex. 1992). The negligent activity theory of liability is only
applicable where the evidence shows that the injuries were directly related to the
activity itself. Id. If the injury was caused by a condition created by the activity
rather than the activity itself, a plaintiff is limited to a premises defect theory of
liability. Lucas v. Titus Cty Hosp. Dist./Titus Cty Mem. Hosp., 964 S.W.2d 144, 153
(Tex. App.--Texarkana 1998, pet. denied).

 The Texas Supreme Court's decision in Keetch v. Kroger Co. provides
guidance in determining what evidence is needed to establish that an injury was the
contemporaneous result of the negligent activity itself rather than a condition created
by the negligent activity. Keetch, 845 S.W.2d at 264. In Keetch, the plaintiff was
injured 30 minutes after a chemical substance was deposited on a floor in the floral
section of a Kroger store. Id. In rejecting the contention that Kroger's employees
were conducting a negligent activity, the Texas Supreme Court noted that there was
no "ongoing" activity by Kroger employees at the time of the plaintiff's injury. Id. 
Thus, while the plaintiff "may have been injured by a condition created by the
spraying, . . . she was not injured by the activity of spraying." Id. As the court noted
"[a]t some point, almost every artificial condition can be said to have been created by
an activity." Id. The court concluded that the case was properly a premises liability
case, as opposed to a negligent activity case. Id.

 In Stanley Stores v. Veazey, the Beaumont Court of Appeals applied the Keetch
analysis to examine evidence regarding the proximity of the ongoing negligent
activity to the location of the plaintiff's injury. Stanley Stores, 838 S.W.2d at 886. 
In Stanley Stores, while shopping in a store, the plaintiff slipped on a clear liquid and
fell to the floor. Id. The store manager found "a small puddle of water and a paper
cup" in the area where the plaintiff slipped. Id. The cup was a small sample-type
similar to those being used at that time in promotion of a Pepsi display. Id. The Pepsi
display was located near the front entrance of the store--away from the area where
the plaintiff fell. Id. There was no evidence showing how the small cup and the clear
substance came to rest in its location. Id. 

 The court held that, under the holding in Keetch, these facts were insufficient
to support a negligent activity claim. As the court explained:

 Let's assume that all of the evidence was proof positive (matter of law)
that the liquid which caused Mrs. Veazey to slip and fall did indeed
originate from the Pepsi display activity which was ongoing at the time
of the fall. Thus, we have an ongoing activity (Pepsi display) in one
area of the store and a slip and fall on a substance generated from that
activity in another area of the store. Keetch says, "Recovery on a
negligent activity theory requires that the person have been injured by
or a result of the activity itself rather than a condition created by the
activity." Even under our proof positive assumption, Mrs. Veazey
slipped on "a condition created by the activity."


 We conclude then, that for a plaintiff to be entitled to a negligent
activity submission, the evidence must show that the injuries were
directly related to the activity itself. 


Id. at 886 (emphasis in original). Thus, the Beaumont court held that there was "no
connection between the injury and the ongoing Pepsi display which would lead us to
conclude that the injury occurred as a contemporaneous result of an ongoing
activity." Id. Accordingly, under the holdings in Keetch and Stanley, we conclude
that to establish that an injury was the contemporaneous result of a negligent activity,
the evidence must show that the alleged negligent activity occurred near both the time
and location of the injury. 

Analysis

 In this case, Persley alleges that she fell as a result of the ongoing negligent
activity of Luis stocking the end cap and/or "actively" stocking the frozen foods
section. Persley alleges that Luis did not place warning cones in the aisles as he
carried "dripping loads of frozen food" down the aisles back and forth from a pallet
to stock various freezers, including the end cap. However, viewing the facts in the
light most favorable to Persley and even assuming that Luis was dripping water in the
aisles, there is not more than a scintilla of evidence that, at the time Persley fell, Luis
was either (1) in the process of stocking the end cap or (2) passing back and forth by
the spot where she fell. To the contrary, the evidence at trial was that (1) at least 15
minutes passed between the time that Persley fell and the time that Luis left the area
of the end cap to stock the frozen dinner section and (2) Luis was not passing back
and forth by the end cap at the time of Persley's fall. The alleged ongoing negligent
activity did not occur where the injury occurred. Thus, there was no connection
between the injury and the stocking of the frozen foods section that would lead us to
conclude that Persley's injury occurred as a contemporaneous result of a negligent
activity. Persley testified that she did not see anyone with a cart at the time of her
injury. She testified that, before the fall, she did not see anyone stocking the end cap.
Tara testified that she and Persley went separate directions when they entered the
store. She testified that, as she shopped, she did not see a Kroger employee stocking
in the area where Persley fell.

 Palermo, the Blue Bell employee, testified that, before Persley fell, Luis had
been stocking frozen food next to him at the end cap, and there was water on the
floor. Luis was using a shopping cart or basket to bring the frozen food to the end
cap freezer. Palermo testified that Luis "had a basket there. He was putting product
already from the pallet that had gotten in that day. He was working some product
with plastic wrapped around." Palermo testified that there was water under Luis's
basket that he assumed came from the product in the plastic wrap and that Luis did
not have any warning cones or mats set out. Palermo also testified that it took him
about 35 minutes to stock the end cap. During the 35 minutes that Palermo was
stocking the end cap, Luis was "in and out" of the area "going and getting some
product, bringing some more and putting it out." Palermo testified that, about 15
minutes after he finished stocking it, Persley slipped and fell in front of the end cap. 
Palermo also testified that Luis was still stocking after he finished. 

 Luis testified, that at the time of Persley's fall, he was stocking frozen dinners
on Aisle 7 from a pallet of frozen foods on Aisle 8. The pallet was located near the
end of Aisle 8 toward the back of the store. He testified, with the assistance of a hand
drawn map, that he took the product from the pallet on Aisle 8 to the frozen dinner
freezer on Aisle 7 by walking to the back of the store and around the backside of the
aisles. This path took him away from the end cap in the front of the store where
Persley fell.

 Luis testified that since he was working on a different aisle, he did not see
Persley fall. He was called to the end of Aisle 8 by the co-manger, Mr. Lawrence,
where he saw Persley lying on the floor. At the time he was called to the end cap, he
had delivered other food to other portions of the frozen food section. He testified that
he did not remember "most of the stuff that happened that day" because three and a
half years had passed. He testified that he could have delivered food "anywhere in
the frozen food department" including the "icebox at the front of the end cap."

 Finally, Luis testified he did not know precisely how long it had been since he
had last worked in the area around the end cap before Persley's fall. However he 
testified that, based on his experience of how long it would take him to load and 
move his cart and mat from the end cap to Aisle 7, at least 15 minutes had passed
between the time that he was last working at the end cap and when Mr. Lawrence
called him over to see Persley lying on the floor.


 Viewing the evidence in the light most favorable to the jury's findings and
indulging every reasonable inference deductible from that evidence in their favor, we
conclude that there was not more than a scintilla of evidence that Persley was injured
by or as a contemporaneous result of the negligent activity of a Kroger employee
itself rather than a condition created by the negligent activity. See Keetch, 845
S.W.2d at 264. Accordingly, the trial court erred in submitting the negligent activity
claim to the jury and we sustain issue one.

 Having sustained Kroger's no-evidence point of error, we need not address the
remaining issues.Conclusion

 We reverse the trial court's judgment and render judgment that the plaintiff
take nothing.

 




 George C. Hanks, Jr.

 Justice


Panel consists of Justices Nuchia, Hanks, and Higley.
1. Blue Bell settled with Persley and is no longer a party to this litigation.
2. The trial court also rejected Kroger's argument that some, if not all, of Persley's
injuries were caused by her own negligence. Consequently, the trial court did not submit a
question regarding Persley's proportionate responsibility for her injury to the jury.